## STARKE *vs.* BLACKWELL AND WIFE.

[BILL IN EQUITY TO SUBJECT WIFE'S SEPARATE ESTATE TO PAYMENT OF NOTE.]

1. *Proof of execution of note.*—The issue in this case being, whether the *feme covert* defendant executed the promissory note which was sought to be charged upon her separate estate, and which purported to be signed by her, jointly with her husband; one witness expressing the opinion that her signature was genuine, while four other witnesses testified, that the handwriting, though closely resembling the defendant's, was not hers; and the evidence showing that, when the note was handed to the husband, and he was required to procure his wife's signature, he went with it towards the room occupied by himself and wife, and returned with her name signed to it,—*held*, that the evidence was not sufficient to overcome the sworn denial of the answer.

APPEAL from the Chancery Court of Dallas. Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Thomas Starke, against Mrs. Sallie Blackwell and F. M. Blackwell, her husband;

and sought to enforce payment, out of Mrs. Blackwell's separate estate, of a promissory note which purported to have been signed by her, jointly with her former husband, Joseph Cone, and others, and which was given for the hire of slaves.   Mrs. Blackwell denied in her answer that she ever signed the note, or authorized any one else to sign it for her; and pleaded that fact in bar of the suit. The opinion of the court contains a sufficient statement of the evidence bearing on this controverted question of fact.   On final hearing, on pleadings and proof, the chancellor held the evidence insufficient to overcome the denials of the answer, and therefore dismissed the bill; and his decree is now assigned as error.

GEO. W. GAYLE, for appellant.

BYRD & MORGAN, contra.

A. J. WALKER, C. J.—The purpose of this suit is, to charge the separate estate of the *feme covert*, who is a defendant, with the payment of a promissory note, alleged to have been executed by her during a former marriage, the bonds of which were severed by divorcement.   The execution of the note by the defendant is denied in a sworn answer, there being no waiver of the oath by the complainant.   The chancellor, deeming the testimony insufficient to overcome the denial of the answer, dismissed the complainant's bill.   Avoiding the intimation of an opinion upon any other point in the case, we decide, that the chancellor's view of the testimony was correct, and, upon that ground, affirm his decree.

Protracted discussions of evidence, by an appellate court, are generally unnecessary and unprofitable, and should be avoided.   They usually occupy space in the books of reports, without announcing any legal principle, or affording precedents for the adjudication of other cases.   But, as this case is of considerable importance, and the question of fact upon which it hinges is one of intrinsic difficulty, and the counsel evidently have a full conviction of right upon their respective sides, it seems due to the court that its decision should be vindicated by a brief statement of the reasoning which has led to it.

There are five witnesses, (Rainer, Lodor, Craig, Perrine, and Hatcher,) who give testimony of their opinion as to the handwriting of the defendant's name. One of these witnesses (Rainer) expresses an opinion, that the handwriting is the defendant's; while the other four express the contrary opinion. From the testimony of Lapsley we learn, that after the note was signed by Cone, the defendant's husband, and delivered to one of the complainant's agents, it was returned to Cone, with the exaction that he should procure his wife's signature; and that he took the note, went towards the room occupied by himself and his wife, and returned in a short time, with her name to the note. These facts fall far short of demonstrating the execution of the note by the defendant; because it neither appears that Cone, while he was absent with the note, went into his room, nor, if he did, that his wife was there, or that he saw her at all. These facts show, that the name of the defendant was affixed at a time different from that at which her husband signed his own name, and afford a refutation of the argument, that because Cone's own signature indicates that he was too drunk to have committed a forgery at the time when he signed his own name, he must have been drunk and incompetent to have imitated his wife's signature at the time when her name was affixed to the note. But the important deduction from those facts is, that Cone had an opportunity, unobserved, to sign his wife's name to the note, and that no other person had such opportunity. It is proper also to observe, just here, that Cone is proved to have been an expert pensman; and the inference is legitimate, that he was familiar with his wife's handwriting. From the premises above stated it is a necessary inference, that either the defendant herself signed her name, or that her husband, an expert pensman, and familiar with her handwriting, signed her name, imitating her handwriting. With the latter of these alternative propositions, the testimony of all the five witnesses, who give their opinions as to the handwriting, harmonizes.

Several of these five witnesses say, that the name of the defendant as written bears a striking resemblance to her

handwriting, and that they would not probably have suspected its genuineness, had it not been disputed; but, being invited to a scrutiny of the handwriting by the controversy as to the genuineness of the signature, they are enabled to discover differences from the formation of the letters and the character of the marks, peculiar to the writing of the defendant, which lead to the opinion that the signature is not genuine. Upon the supposition that the defendant's name was written by her husband, and her handwriting imitated, we would look for just what we find in this case,—a failure on the part of as many as one-fifth of those not peculiarly skilled in judging of handwriting to detect the forgery, and a detection by the others only after they had been led to make a scrutinizing examination. Therefore, the fact that one witness, out of five, thought the name to be in her handwriting, and that the others attained a different conclusion only after a close examination, proves merely that there was a striking resemblance, and is consistent with the supposition of a skillful forgery. Indeed, it is precisely what may always be expected where there is an ingenious forgery.

There are other facts in proof, which we proceed to notice, tending to support the testimony of the four witnesses, who express the opinion that the name of the defendant is not in her handwriting. The differences shown to have existed between the signature to the note and the defendant's accustomed writing, are such as would be likely to occur in an attempt by a man, handling the pen expertly, to imitate the handwriting of a lady who (as we infer was the case with the defendant) did not write a great deal, and was not expert in writing. One of the witnesses (Warford) testifies, that there is a resemblance in the writing of the defendant's name to the handwriting of Cone. Lapsley, another witness, shows that Cone desired the note to be taken without the signature of his wife, and at first delivered it without her signature. From this testimony it is a legitimate inference, that Cone was reluctant to ask his wife's signature; either because he felt a delicacy in doing so, or because he apprehended a

refusal on her part; and there was, therefore, a motive for his affixing her signature without her consent. We thus have the opinions of four witnesses, that the defendant's name is not in her handwriting, corroborated by other facts, and opposed by no greater conflict of opinion, than will probably always be found in cases where signatures have been forged with any degree of skill.

To overcome the strong case thus made out for the defendant, the complainant has the testimony of the witnesses Taylor and Sims, as to the defendant's declarations not yet noticed. To the declarations proved by Taylor we attach but little importance. It is neither unreasonable, nor unusual, that a married woman should speak of her husband's debt as a burden common to him and herself. The defendant has attempted to assail the character of the witness Sims; but it must be conceded to the complainant, that the attempt was ineffectual, and that we are not justified by the evidence in refusing to credit his testimony on the score of bad character. We will not attempt to reconcile the declarations, proved by this witness, with the other testimony, or with the supposition that the defendant did not execute the note. If the declarations were made, without any qualification, precisely as they are stated by the witness, they would weigh very heavily against the conclusion that the defendant did not execute the note. But, in determining what influence should be conceded to these declarations, it is proper to consider that they are proved after the lapse of several years; that they appear to have been made incidentally, in a conversation having reference to the mistreatment of the defendant by her husband and its cause; that they were not made with any deliberation, or with any view to their effect as evidence against the declarant; that they were not addressed to the witness, and did not concern him in any way; that there seems to have been nothing to impress the precise language used upon the memory of the witness; and that the witness professes most strangely to have forgotten who were present, and to whom the conversation was addressed, and thus indicates, either a frailty of memory, or an intention to so shape

his testimony as to avoid contradiction or explanation. To·these must be added the farther consideration, that the nature of the declarations is such that a very slight alteration of the language, either from imperfection of memory, misapprehension, or design, might change their effect. Declarations, made and proved under such circumstances, should· be received with caution, and they must weigh with a heaviness largely diminished,on account of the considerations above stated, in the scales against opposing evidence.—Garrett v. Garrett, 29 Ala. 439.

We have noticed all the evidence in this case, which has an important bearing upon the point of controversy. It is incumbent upon the complainant to sustain the allegation denied, by what would be at least equivalent to the positive proof of one witness, supported by corroborating circumstances. After allowing to the defendant's testimony its proper effect, in contradicting and neutralizing the complainant's, we are forced to the conclusion, that if the balance of proof is not on the defendant's side, the complainant is at least left without the measure of proof necessary to overcome the denial of the answer.

The chancellor's decree is affirmed.